UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| TIMOTHY W. SANDERS, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:14-cv-00554 |
| v. ) | |
| ) | Honorable Janet T. Neff |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**OPINION**

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and Supplemental Security Income (SSI) benefits. On May 25, 2011, plaintiff filed his applications for DIB and SSI benefits. Plaintiff alleged a March 3, 2011, onset of disability.[1] (ID# 258). Plaintiff's claims were denied on initial review. (ID## 124-53,156-82). On May 6, 2013, he received a hearing before an ALJ. (ID## 80-101). On June 26, 2013, the ALJ issued his decision finding that plaintiff was not disabled. (ID## 61-72). On March 25, 2014, the Appeals Council denied review (ID## 39-42), and the ALJ's decision became the Commissioner's final decision.

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Accordingly, June 2011, is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. The ALJ's factual finding regarding plaintiff's credibility is not supported by substantial evidence.

2. The ALJ failed to give proper weight to medical opinions.

3. The ALJ's factual finding regarding plaintiff's RFC is not supported by substantial evidence.

(Pltf. Brief at 12, 17, 22, Dkt. 13, ID## 777, 782, 787). The Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the

[Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## The ALJ's Findings

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from March 3, 2010, through the date of the ALJ's decision. (Op. at 3, ID# 63). Plaintiff had not engaged in substantial gainful activity on or after March 3, 2011, the alleged onset date. (*Id.*). Plaintiff had the following severe impairments: human immunodeficiency virus (HIV)/acquired immunodficiency syndrome (AIDS);

degenerative disc disease; inflammatory bowel disease (IBD); chronic obstructive pulmonary disease (COPD); depression; and anxiety. (*Id.*). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.* at 4, ID# 64). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can lift 10 pounds occasionally, stand/walk 2 hours of an 8-hour workday, and sit 6 hours of an 8-hour workday, with normal breaks. He can never climb ladders, ropes or scaffolds, and occasionally climb ramps/stairs, balance, stoop, crouch, kneel and crawl. He must have a sit/stand option after 15 minutes of sitting. He should avoid concentrated exposure to hazards, fumes, odors, dust, gases. He is also limited to unskilled work, with a specific vocational preparation (SVP) of 1 or 2, performing simple, routine, repetitive tasks with only occasional changes in work setting.

(Op. at 5, ID# 65).

The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible. (*Id.* at 6-9, ID## 66-69). Plaintiff could not perform any past relevant work. (*Id.* at 9, ID# 69). Plaintiff was 43-years-old as of the date of his alleged onset of disability and 45-years-old on the date of the ALJ's decision. Thus, at all times relevant to his claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (*Id.* at 10, ID# 70). Plaintiff has at least a high school education, and he is able to communicate in English. (*Id.*). The ALJ found that the transferability of jobs skills was not material to a determination of disability. (*Id.*).

The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 216,000 jobs in the national economy that the hypothetical person would be capable of performing. (Op. at 11, ID# 71). The ALJ found that this constituted a significant number of jobs. Using Rule 201.28 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (*Id.*).

## Discussion

### 1.

Plaintiff contends that the ALJ's finding regarding his credibility is not supported by substantial evidence, citing several bases for this contention.[2] (Pltf. Brief at 12-17, ID## 777-82). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to

---

[2]Among the plaintiff's complaints regarding the ALJ's assessment of his credibility is that "the ALJ discounted the information provided by Mark A. Jones, [plaintiff's] stepfather." (Pltf. Br. at 15, ID# 780). This contention is without basis in fact or law. The ALJ's only reference to the information Mr. Jones provided was in the context of assessing the "moderate weight" the ALJ gave to Mr. Jones' lay opinions; it was unrelated to the assessment of plaintiff's credibility. (*See* Op. at 8, ID# 68). Moreover, his stepfather is an "other source," 20 C.F.R. § 404.1513(d)(4), whose opinions were not entitled to any particular weight. *See Engelbrecht v. Commissioner*, 572 F. App'x 392, 398 (6th Cir. 2014). Nor was the ALJ required to provide "good reasons" for the weight he gave to Mr. Jones' opinions. *See Smith v. Commissioner*, 482 F.3d 873, 876 (6th Cir. 2007).

determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

The Court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d at 714. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the Court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Commissioner*, 336 F.3d at 476; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d at 248. The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

Plaintiff complains that the ALJ improperly considered his daily activities in assessing his credibility because the daily activities are not inconsistent with his alleged symptoms. The ALJ noted that plaintiff reported the following daily activities: "caring for personal needs, preparing simple meals daily, doing laundry, driving short distances, shopping in stores weekly, managing finances, watching television, using a computer, and checking email." (Op. at 8, ID# 68 (citing Exhs. 3E, 4E, 6E, 7E, and 8F)). The relevance of these activities are not limited to the symptoms cited in plaintiff's brief. (*See* Pltf. Br. at 13, ID# 778 ("fatigue, depression, back and leg pain, sleeplessness, nausea, loss of motivation, and weight loss")). Rather, the ALJ noted the daily activities within the context of all plaintiff's "complaints of disabling conditions and limitations." (Op. at 8, ID# 68).

The ALJ properly considered plaintiff's reported daily activities in determining the severity of plaintiff's impairments and in evaluating his claims regarding "symptom-related functional limitations and restrictions." 20 C.F.R. § 404.1529(c)(3); *see also Warner v. Commissioner*, 375 F.3d 387, 392 (6th Cir. 2004) ("The [ALJ] justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."). It was also appropriate for the ALJ to take these daily activities into account in assessing plaintiff's credibility. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

Plaintiff's second asserted error is that the ALJ improperly considered the part-time work plaintiff performed during the period of alleged disability. In November 2012, plaintiff admitted to his treating psychiatrist that he was working four to five hours, three days a week. (Op. at 8, ID# 68 (citing Exh. 10F)). The ALJ noted that plaintiff's work activity "indicate[s] that [his] daily activities have, at least at times, been somewhat greater than [he] has generally reported." (*Id.*).

Plaintiff's argument that this work activity constituted an "unsuccessful work attempt" lacks merit. An "unsuccessful work attempt" is relevant only in considering whether plaintiff had been engaged in "substantial gainful activity," a step one determination. *See* 20 C.F.R. § 404.1574(a)(1). Here, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity, despite his part-time work experience. (*See* Op. at 3, ID# 63).

There is nothing in the regulations that prohibit an ALJ from considering a claimant's work history during the alleged period of disability in assessing the claimant's credibility. To the contrary, employment is the quintessential "daily activity" with respect to assessing symptom-related functional limitations in a disability case. *Cf.* 20 C.F.R. § 1529(c)(3) ("We will consider all of the evidence presented, including information about your prior work record . . . ."). The Sixth Circuit has upheld the consideration of part-time employment as a factor relevant to a disability determination. *See Miller v. Commissioner*, No. 12-3644, 2013 WL 1705026, at *2 (6th Cir. Apr. 22, 2013).

In this case, the ALJ's reliance on plaintiff's part-time work experience in assessing his credibility was particularly well-founded. While plaintiff now asserts that this part-time work ended "because of his impairment," (Pltf. Br. at 14, ID# 779), during the administrative hearing, he acknowledged that he was laid off as a result of a decline in business. (ID# 87).

Plaintiff's third asserted error, that the ALJ improperly considered his failure to comply with his doctor's prescription to quit smoking in assessing his credibility, is without merit. The ALJ found that plaintiff's failure to comply with the prescribed treatment further undercut the credibility of his testimony. (Op. at 8, ID# 68). Under the social security regulations, the claimant bears the burden of demonstrating good reasons for his failure to follow prescribed treatment: "If you do not follow the prescribed treatment without good reason, we will not find you disabled." 20 C.F.R. §§ 404.1530(b), 416.930(b). Moreover, the Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible. *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 479–80 (6th Cir. 1988).

### 2.

Plaintiff argues that the ALJ failed to give proper weight to medical opinions of a treating psychiatrist, Ashit Vijapura, M.D., and a treating social worker, Kevin Sanders. (Pltf. Brief at 17, ID## 782-87). On June 13, 2011, Dr. Vijapura noted in a Worker's Compensation progress report that plaintiff told him he was "not doing well," that he had "quit his job," that he was "physically debilitated," that his "sleep is poor,"

and that his "appetite is poor." (ID# 507). Under the heading "work status," Dr. Vijapura simply noted: "unable to work." (*Id.*).[3]

Dr. Vijapura's opinion that plaintiff was unable to work is not entitled to any weight. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1) 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d at 390. Accordingly, a treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *see also Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").

Similarly, Dr. Vijapura's notations of plaintiff's subjective statements regarding his symptoms or limitations are not medical opinions at all. "[T]he mere regurgitation of third-party statements concerning a claimant's alleged symptoms does not constitute objective medical evidence subject to the protections of the good reasons rule." *Mitchell v. Commissioner*, 330 F. App'x 563, 569 (6th Cir. 2009) (citing *Bass v. McMahon*, 449 F.3d at 511). Moreover, even if Dr. Vijapura had adopted plaintiff's statements as his own opinions, it would not alter the outcome here. An opinion that is based on the claimant's reporting of his or her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see*

---

[3]Other records from Dr. Vijapura indicate that plaintiff was able to work part-time. (*See* ID## 506, 511, 519-20).

*also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

The social worker, Kevin Sanders, noted on February 6, 2013, that plaintiff reported, among other things, having crying spells, insomnia, and appetite disturbance. (ID# 696). As with his statements to Dr. Vijapura, plaintiff's subjective assessments are not medical opinions entitled to any weight. *See Mitchell v. Commissioner*, 330 F. App'x at 569.

Mr. Sanders' diagnosis of "major depressive disorder" (ID# 701) is not entitled to any particular weight. The treating physician rule does not apply to the opinions of social workers because they are not "acceptable medical sources." *See* 20 C.F.R. § 404.1513(a), (d)(1). There is no treating social worker rule. Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)); *see also Bliss v. Commissioner*, 406 F. App'x 541, 541 (2d Cir.2011) ("[T]he assessment by the social worker is ineligible to receive controlling weight because social workers do not qualify as 'acceptable medical sources.'").

The opinions of social workers fall within the category of information provided by "other sources."[4]  *See* 20 C.F.R. § 404.1513(d).  The social security regulations require only that information from other sources be "considered."  SSR 06-03p, 2006 WL 2329939, at *1, 4 (citing 20 C.F.R. §§ 404.1513, 416.913); *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Commissioner*, 502 F.3d at 541.  This is not a demanding standard.  It was easily met here.  While there is no specific discussion of Mr. Sanders' diagnosis, the ALJ included depression as one of plaintiff's severe impairments.  (*See* Op. at 3, ID 63).[5]

---

[4]"The Commissioner 'may' use evidence from other sources, but information from these 'other sources' cannot establish the existence of a medically determinable impairment." *Brown v. Commissioner*, 591 F. App'x 449, 451 (6th Cir. 2015) (quoting SSR 06-03p, 2006 WL 2329939, at * 2).  The ALJ has "discretion to determine the proper weight to accord opinions from other sources." *Engebrecht v. Commissioner*, 572 F. App'x 392, 398 (6th Cir. 2014).  The opinions of "other sources" are not entitled to controlling weight and there is no requirement that the ALJ provide "good reasons" for rejecting such opinions. *See Smith v. Commissioner*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Engebrecht v. Commissioner*, 572 F. App'x at 398; *Borden v. Commissioner*, No. 1:13 cv 2211, 2014 WL 7335176, at * 9 (N.D. Ohio Dec.19, 2014); *Hibbard v. Commissioner*, 1:12–cv–1216, 2014 WL 1276518, at * 6 (W.D. Mich. Mar.27, 2014).

[5]That Mr. Sanders rated plaintiff's GAF score at 50 is of little consequence.  GAF scores are subjective rather than objective assessments and are not entitled to any particular weight. *See Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006).  The explanation of the GAF score in the Diagnostic & Statistical Manual of Mental Disorders (DSM) IV indicates that "a score may have little or no bearing on the subject's social and occupational functioning." *Id.*  "[T]he latest edition of the [DSM] no longer includes the GAF scale." *Davis v. Commissioner*, No. 1:13-cv-1556, 2014 WL 4182737, at *8 (N.D. Ohio Aug. 21, 2014); *see also Finley v. Colvin*, No. 12-7908, 2013 WL 6384355, at *23 n.9 (S.D.W.V. Dec. 5, 2013) ("It should be noted that in the latest edition of the [DSM], the GAF scale was abandoned as a measurement tool.").

Plaintiff also complains that the ALJ improperly discounted the findings of Anne-Marie Caroline Nicolas, Psy.D, who conducted a consultative examination. (Pltf. Br. at 20-21, ID## 785-86). In August 2011, Dr. Nicolas diagnosed plaintiff with bipolar disorder, not otherwise specified. (ID# 482). She noted that plaintiff's social functioning "appears moderately impaired based on reports of limited interaction with same age peers," and that psychological functioning "appears significantly impaired based on reported mood symptoms." (*Id.*).

As evident from Dr. Nicolas' own statements, she qualified her assessments of plaintiff's functional limitations by noting that they were based on plaintiff's subjective report of his symptoms. The ALJ properly discounted these assessments. *See, e.g., Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990) (Noting that, in assessing a medical provider's opinion, the ALJ may consider that the opinion "[was] established almost entirely on the basis of the claimant's subjective complaints.").

Moreover, Dr. Nicolas' assessments of plaintiff's functional limitations were inconsistent with her own findings during the examination. She noted that plaintiff was "alert" and "oriented"; he "had good grooming and hygiene"; his "speech was logical and coherent"; he had "[n]o significant impairment in memory"; "his behavior was cooperative and appropriate"; his "[m]ood was euthymic with broad affect"; and his "[a]ttention and concentration were good throughout the interview." (ID# 482). Accordingly, there is substantial evidence to support the ALJ's determination that Dr. Nicolas' opinions were entitled to "moderate weight" due to their lack of support in the doctor's examination findings. (Op. at 9, ID# 69).

Finally, plaintiff argues that the ALJ gave too much weight to the three reviewing state agency physicians: Arthur Waldman, M.D.; Edmund Molis, M.D.; and Robert Schilling, Ph.D. (Pltf. Br. at 21-22, ID## 786-87). Dr. Waldman determined that plaintiff "could lift 20 pounds occasionally, 10 pounds frequently; stand/walk 2 hours of an 8-hour day; sit 6 hours of an 8-hour day; occasionally perform postural activities; and should avoid concentrated exposure to respiratory irritants and hazards." (Op. at 8, ID# 68 (citing Exhs 3A and 4A)). Dr. Molis expressed similar assessments. (Op. at 8-9, ID## 68-69 (citing Exhs 7A and 8A)). Dr. Schilling determined that plaintiff's mental impairments "resulted in moderate difficulties in maintaining concentration, persistence or pace." (Op. at 9, ID# 69).

The records to which the ALJ cited provide substantial evidence to support his determination to give these opinions "considerable weight," as they were consistent with the medical evidence. (Op. at 8-9, ID## 68-69). *See* 20 C.F.R. § 404.1527(e); *see also Waddell v. Commissioner*, 1:12-cv-1124, 2014 WL 1028883, at *5 (W.D. Mich. Mar. 17, 2014) ("An ALJ may . . . rely on the opinions of the non-examining state agency physicians who reviewed plaintiff's file."); *Paseka v. Commissioner*, 1:09-cv-1073, 2011 WL 883701, at *2 (W.D. Mich. Mar. 11, 2011) (An ALJ may rely upon an opinion of a non-examining state agency physician's opinion when it is "consistent with the record as a whole."). The fact that the state agency physicians did not have the opportunity to review the entire record does not alter the outcome here. *See Helm v. Commissioner*, 405 F. App'x 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and

comprehensive' case record."). Moreover, the ALJ gave plaintiff the benefit of the doubt in restricting his RFC beyond that suggested by the state agency reviewers. (*See* Op. at 9, ID# 69 ("the undersigned further limited the claimant to lifting no more than 10 pounds and provided for a sit/stand option"); *see also id.* ("the undersigned found the claimant's mental impairments to be more limiting").

### 3.

Plaintiff argues that the ALJ's factual finding regarding his RFC is not supported by substantial evidence. (Pltf. Br. at 22-24, ID## 787-89).[6] Plaintiff contends that the RFC determination lacks substantial support because the "sedentary work" occupational base is further eroded by additional limitations listed in the RFC. (*Id.* at 23-24, ID## 788-89).

Plaintiff's argument lacks merit. The ALJ questioned the vocational expert (VE) using a hypothetical question that contains all the RFC limitations on which plaintiff now relies. (Compare Op. at 5, ID# 65, with ID## 98-99). The VE responded that there were some 216,000 jobs in the national economy plaintiff was capable of performing. (ID# 99). Accordingly, plaintiff's claim fails, as there is a significant number of jobs he is capable of performing, even with all the limitations listed in the RFC. *See Smith v*

---

[6]The Court has established strict page limitations on the parties' briefs. (*See* Notice Regarding Consent and Directing Filing of Briefs, Dkt. 9 ("Initial briefs may not exceed 20 pages without leave of court."). Plaintiff's initial brief exceeds the twenty-page limit by five pages. The Court would be well within its discretion to ignore plaintiff's argument regarding the third purported error, which begins at page 22. Plaintiff's counsel is admonished that future violations of the page limit will not be tolerated.

*Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

That the ALJ did not incorporate all the limitations supported in Dr. Vijapura and Mr. Sanders' opinions was not error. The ALJ is not required to incorporate unsubstantiated allegations into his or her hypothetical question. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d at 1235.

## Conclusion

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated: September 28, 2015                     /s/ Janet T. Neff
                                              Janet T. Neff
                                              United States District Judge